UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMAS EDWARD KRIESEL, JR.,<br><br>        Defendant. | No. CR03-5258 RBL<br><br>ORDER |

This matter is before the Court on the Government's petition to revoke the supervised release of Thomas Edward Kriesel, Jr. ("Kriesel"), who refused to submit a DNA sample in compliance with federal law requiring all felons to submit to a DNA test. This case raises a question of first impression, whether under the Fourth Amendment it is reasonable to permit law enforcement to forcibly extract DNA from all felons, including probationers who are non-violent, first-time offenders.

**BACKGROUND**

Kriesel is a first-time drug offender who generally has done well on supervised release. On February 21, 2003, Kriesel began a three-year term of supervised release in the District of Montana after serving a term of imprisonment following his conviction for conspiracy to distribute methamphetamine. On April 9, 2003, jurisdiction was transferred to the Western District of Washington.

On May 2, 2003, Kriesel failed to pass a urine analysis. The analysis showed that Kriesel consumed morphine in violation of his supervised release. From January 20, 2004, to February 22, 2005, subsequent failed urine analyses show that Kriesel used marijuana. After each failed test, the court elected to continue Kriesel on supervision without modification of his supervised release. The court based its decision on Kriesel's steady employment, enrollment in drug treatment, recent marriage, and established ties to the community. Kriesel also fully cooperated with his probation officer and was in compliance with other conditions of supervised release. Since early 2005, Kriesel has continued to participate in substance abuse treatment, showed consistently negative results on drug and alcohol tests, maintained full employment, and otherwise performed successfully on supervision.

On August 22, 2005, the Probation Department petitioned this Court to revoke supervision, alleging that Kriesel had failed to report for extraction of his DNA on August 3 and 18, 2005. Kriesel had informed his probation officer at the time that he was initially scheduled for DNA extraction that he was opposed on principle to Governmental collection and permanent storage of his DNA and that he would consult with counsel to explore his legal options. Kriesel is not a violent offender.

## DISCUSSION

The alleged violation arises from the DNA Analysis Backlog Elimination Act of 2000 (DNA Act), 42 U.S.C. § 14135a(a)(2). The DNA Act authorizes the Bureau of Prisons to forcibly extract a DNA sample from individuals on supervised release or probation who had been "convicted of a qualifying Federal offense (as determined under subsection (d) of this section)...." Subsection (d) was revised in 2004 to provide that the offenses enumerated therein, including "[a]ny felony," are treated as qualifying offenses. 42 U.S.C. § 14135a(d); 70 FR at 4764.

The former regulation implementing the DNA Act of 2000 limited the qualifying federal offenses to

ORDER
Page - 2

crimes of violence and certain narrow categories of offenses specified in the statute. *See* 70 FR 4763. In contrast, the current regulation, 28 C.F.R. § 28.2, reflects on Congress's revision of the DNA Act to treat all felonies as qualifying offenses for purposes of DNA sample collection. *Id*. The current regulation was proposed and published in the Federal Register on January 31, 2005, 70 FR at 4767, and became effective on the same day, 70 FR 4763.

### A. The Administrative Procedure Act

The Administrative Procedure Act (APA), 5 U.S.C. § 553, requires a federal agency to follow certain procedures when proposing a rule. These procedures include publishing notice of the proposed rule-making in the Federal Register, 5 U.S.C. § 553(b), providing an opportunity for interested persons to comment on the proposed rule and have the comments considered by the agency prior to adopting the rule, 5 U.S.C. § 553(c), and publishing the adopted rule not less than thirty days before its effective date, 5 U.S.C. § 553(d).

Kriesel argues that the current regulation implementing the DNA Act violated the APA when the Attorney General failed to give a thirty-day advance notice and when he made the regulation effective immediately. But Kriesel's argument fails to note that the regulation merely implemented a revised version of the DNA Act that broadened "qualified offenses" to include "[a]ny felony." Even if the regulation conflicted with the statute, which it does not in this case, the statute will trump the regulation. *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Thus, the crux of this case is not whether the regulation violated the APA, but whether the underlying DNA Act violates Kriesel's rights under the Fourth Amendment.

### B. Fourth Amendment

Acts passed by Congress enjoy a rebuttable presumption of constitutionality. *U.S. v. Booker*, 543 U.S. 220, 274 (2005), *citing, Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984)). Accordingly, the Court in this case will begin its analysis by presuming that the DNA Act is constitutional.

United State Supreme Court precedent maintains that the "touchstone of the Fourth Amendment is reasonableness." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996), *quoting, Florida v. Jimeno*, 500 U.S. 248, 250 (1991). In measuring reasonableness, the Court has employed a totality of the circumstances analysis rather than a bright-line rule. *Id.* Courts assess reasonableness under the totality of the circumstances approach by balancing the degree to which a given search intrudes upon an individual's privacy against the degree to which the search is needed to promote legitimate governmental interests. *United States v. Knights*, 534 U.S. 112, 112-13 (2001), *citing*, *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). The Court concludes that collection of Kriesel's DNA is a reasonable intrusion on his privacy under the totality of the circumstances analysis.

As a convicted felon on supervised release, Kriesel is properly subjected to a broad range of restrictions that might infringe constitutional rights in free society, in no small part due to the extraordinary rate of recidivism among offenders. *United States v. Kincade*, 379 F.3d 813, 833 (2004).[1] The Supreme Court has stated on multiple occasions "that conditional releasees enjoy severely constricted expectations of privacy relative to the general citizenry-and that the government has a far more substantial interest in invading their privacy... ." *Kincade* at 834; *see also*, *Knights* at 119-20, *Ferguson v. City of Charleston*, 533 U.S. 67, 79 n. 15, *Griffin v. Wisconsin*, 483 U.S. 868, 874-75 (1987).

Compulsory extraction for DNA profiling constitutes a search within the meaning of the Fourth Amendment. *Kincade* at 821; *see also*, *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989). Nonetheless, it is firmly established that the intrusion occasioned by a blood test is not significant, since such "tests are commonplace ... the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk of harm, trauma, or pain." *Kincade* at 836, *quoting, Skinner* at 625. In specifically

---

[1]The Ninth Circuit in *Kincade* applied a totality of the circumstances analysis and concluded that it was reasonable under the DNA Act of 2000 to require individuals convicted of qualifying offenses to submit to DNA testing. The *Kincade* court did not consider the constitutionality of requiring all felons to submit DNA samples. *Kincade* at 819 n.9.

ORDER
Page - 4

considering compulsory DNA profiling of qualified offenders under the former DNA Act, the Ninth Circuit concluded that it can only be described as minimally invasive–both in terms of the bodily intrusion it occasions, and the information it lawfully produces. *Kincade* at 838. In light of the aforementioned considerations, the Court believes that the collection of Kriesel's DNA is a minimal intrusion upon his diminished privacy expectations.

The final aspect of the totality of the circumstances analysis, and the most difficult component for the Court, is the assessment of the government interests furthered by DNA collection under the circumstances in this case. In applying the totality of the circumstances analysis and concluding that DNA collection under the former DNA Act was reasonable under the Fourth Amendment, the *Kincade* court relied primarily on the consideration of the following government interests: (1) ensuring that a parolee complies with the terms of release; (2) the deterrent effect of such profiling; and (3) contribution to the solution of past crimes. *Id*. at 838-39. The *Kincade* court, considering these interests, concluded that they were "undeniably compelling" and "monumental." *Id*. at 838-39. Analyzing the same interests, the Court concludes that the current DNA Act is also supported by a compelling government interest.

In assessing the government's interest in ensuring compliance with release terms, the Court recognizes that a probationer is more likely than an ordinary citizen to violate the law. *Knights* at 120. Furthermore, probationers have a greater incentive than other criminals to dispose of incriminating evidence. *Id*. By providing a system of identification capable of linking individuals to crimes committed while they are on supervised release, compulsory DNA profiling serves society's overwhelming interest in ensuring that a parolee complies with the requirements of his release. *Kincade* at 838.

Compulsory DNA profiling also serves to deter past offenders from committing further crimes, thus fostering society's interest in reducing recidivism. *Kincade* at 839. The Supreme Court has expressed on numerous occasions the pressing need to reduce the alarming rates of re-arrest among prior offenders. *Id.*

ORDER
Page - 5

The final government interest assessed in *Kincade*, and considered here, is the potential contribution to the solution of past crimes that could arise out of compulsory DNA testing of all felons. Access to DNA from all felons could lead to the resolution of previously unsolved crimes, "[bringing] closure to countless victims of crime who have languished in the knowledge that perpetrators remain at large." *Kincade* at 839. Furthermore, such a comprehensive database might assist in absolving the innocent, and in doing so advance the overwhelming public interest in prosecuting crimes accurately. *Kincade* at 839, n. 38.[2]

The Court acknowledges that the government interests furthered by compulsory DNA testing of all felons are not as compelling as they were when considered under the former statutory regime by the *Kincade* court. There is some merit to the argument that a search of a first-time, non-violent probationer such as Kriesel should require some level of suspicion. However, based upon the rationale put forth in the foregoing analysis, the government interests furthered by the current version of the DNA Act remain compelling. Coupling the compelling government interests with conditional releasees' substantially diminished expectations of privacy and the minimal intrusion of a blood sample, the Court has determined that the compulsory DNA profiling of all felons is reasonable under the totality of the circumstances.

Mr. Kriesel is ordered on or before February 28, 2006, to submit to DNA extraction as required by the conditions of supervised release. Supervised release will terminate immediately upon compliance.

IT IS SO ORDERED.

DATED this 17th day of February, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[2] The Court notes that DNA evidence can also be used to exonerate the innocent. The Innocence Project is one example of a national organization that uses DNA to absolve people who were wrongly convicted. *See* http://www.innocenceproject.org/ (last visited Feb. 17, 2006).

ORDER
Page - 6